**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| MELISSA S., Plaintiff, | ) | |
| v. | ) | 1:25CV863 |
| FRANK J. BISIGNANO, Commissioner of Social Security, Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Melissa S., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of the final decision of Defendant, the Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) The Commissioner has filed the certified administrative record (Docket Entry 4 (cited herein as "Tr. __")), and both parties have submitted dispositive briefs in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) (Docket Entry 9 (Plaintiff's Brief); Docket Entry 11 (Commissioner's Brief)). For the reasons that follow, the Court will enter judgment for the Commissioner.[1]

[1] On consent of the parties, this "case [wa]s referred to [the undersigned] United States Magistrate Judge [] to conduct all proceedings . . ., to order the entry of judgment, and to conduct all post-judgment proceedings []herein." (Docket Entry 8 at 1.)

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB (Tr. 245-49), alleging a disability onset date of August 23, 2021 (see Tr. 245, 248). Upon denial of that application initially (Tr. 134-47, 161-65) and on reconsideration (Tr. 148-60, 170-74), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 175-76). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 97-133.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 30-52.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 16-22, 241-44, 361-63), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2026.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since August 23, 2021, the alleged onset date.
>
> 3. [Plaintiff] has the following severe impairments: post viral syndrome (COVID), mild intermittent reactive airways disease, allergies, obesity, depression, anxiety, joint arthralgias, coronary artery disease, pulmonary hypertension, and diabetes.
>
> . . .
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

> . . .
>
> 5. . . . [Plaintiff] has the residual functional capacity to perform light work . . . with the following exceptions: She can occasionally climb. She can frequently crawl, crouch, or stoop. She can frequently balance with standing and walking on even terrain. She must avoid concentrated exposure to hazards, such as unprotected heights and moving machinery. She is limited to occasional exposure to fumes, dusts, gases, and areas with poor ventilation. She is limited to occasional exposure to extreme cold. She can understand, remember, and carry out simple instructions. Such instructions can be detailed but not complex. The tasks should be simple, routine, and repetitive in nature. She can focus on tasks for two hours at a time, learned by demonstration in 30 days or less. She is limited to work environments that undergo routine changes. She must avoid contact with the public. She is limited to occasional contact with coworkers and supervisors.
>
> . . .
>
> 6. [Plaintiff] is unable to perform any past relevant work.
>
> . . .
>
> 10. Considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [she] can perform.
>
> . . .
>
> 11. [Plaintiff] has not been under a disability, as defined in the . . . Act, from August 23, 2021, through the date of th[e ALJ's] decision.

(Tr. 35-47 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If

there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id.

(quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the

---

[2] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

"whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

**B. Assignments of Error**

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he [RFC] assessment is not supported by substantial evidence where it contradicts moderate adaptive limitation by requiring Plaintiff to work in environments that undergo routine changes" (Docket Entry 9 at 7 (bold font, all-caps font, and block formatting omitted));

2) "[t]he [RFC] assessment contains an internal contradiction regarding exertional capacity that renders it unsupported by substantial evidence" (id. at 11 (bold font, all-caps font, and block formatting omitted)); and

---

[5] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

3) "[t]he [RFC] assessment is not supported by substantial evidence where it contains contradictory mental limitations stating [Plaintiff] can follow 'simple instructions' that 'can be detailed but not complex'" (id. at 14 (bold font, all-caps font, and block formatting omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 11 at 3-17.)

### 1. Routine Changes

Plaintiff's first assignment of error maintains that "[t]he [RFC] assessment is not supported by substantial evidence where it contradicts moderate adaptive limitation by requiring Plaintiff to work in environments that undergo routine changes." (Docket Entry 9 at 7 (bold font, all-caps font, and block formatting omitted).) In particular, Plaintiff emphasizes that the ALJ found "moderate limitation [] in the domain of adapting and managing oneself" (id. at 8 (citing Tr. 37)), and "noted the testimony [sic] of Plaintiff's husband that she . . . is '"completely [thrown] off"' by changes in routine" (id. (quoting Tr. 37 (in turn purporting to quote Tr. 299))),[6] as well as "that [the reconsideration-level state agency psychological consultant] determined that Plaintiff had moderate limitations in adapting and managing [oneself]" (id.

---

[6] Plaintiff's husband did not testify at the hearing before the ALJ. Rather, the ALJ paraphrased the statements of Plaintiff's husband on a Third Party Function Report. (See Tr. 37 (purporting to quote Tr. 299).)

(citing Tr. 37 (in turn citing Tr. 152))). In Plaintiff's view, the RFC's limitation to "work environments **that undergo routine changes**" (id. (quoting Tr. 38) (emphasis supplied by Plaintiff)) represents "the exact opposite of what the evidence requires[,]" because "the RFC as written requires that Plaintiff work in environments where changes occur on a routine basis" (id.). According to Plaintiff, "[i]f the ALJ intended to accommodate Plaintiff's adaptive limitation, the RFC would use restrictive language that minimizes changes with terms such as 'infrequent,' 'occasional,' 'minimal,' or 'gradual.'" (Id. at 9.) Additionally, Plaintiff points out that the reconsideration-level state agency psychological consultant's opinion "that Plaintiff 'could adapt to routine changes in the workplace'" (id. (quoting Tr. 159)) "describes the nature or quality of the changes (routine as opposed to major or unexpected), not the frequency with which changes occur" (id.), which "is fundamentally different from the RFC language . . . which affirmatively requires that Plaintiff work where changes occur on a routine basis, meaning frequently, regularly, or as a matter of course" (id. at 10 (referencing Tr. 38)). Plaintiff further deems the ALJ's error "not harmless" (id.), because "[t]he ALJ never asked [the VE] whether jobs exist[ed] in stable environments with occasional routine changes." (Id. at 11.) For the reasons that follow, those contentions lack merit.

Plaintiff's arguments fail for the simple reason that she has not shown that the ALJ intended the RFC's restriction to "work environments that undergo routine changes" (Tr. 38 (emphasis added)) to require Plaintiff to work in settings that involve changes occurring "frequently, regularly, or as a matter of course" (Docket Entry 9 at 10). The ALJ found the reconsideration-level state agency psychological consultant's opinions "partially persuasive" (Tr. 45) based on the following reasoning:

> [The consultant] determined that [Plaintiff] could sustain attention to complete a small variety of tasks at a semi-rapid pace, that she could interact appropriately with others, and that she could adapt to routine changes in the workplace. The administrative medical finding is partially persuasive because the first limitation is vague. The [ALJ] is not sure if the [consultant] is opining that [Plaintiff] could interact with the public, or just coworkers.

(Id. (emphasis added) (internal parenthetical citation omitted); see also Tr. 158-59 (consultant's mental RFC assessment).) That analysis makes clear that the ALJ did not fully credit the consultant's finding that Plaintiff "could interact appropriately with others" (Tr. 45; see also Tr. 159 (consultant's interaction finding)), but did credit the consultant's determination that Plaintiff "could adapt to routine changes in the workplace" (Tr. 45 (emphasis added); see also Tr. 159 (consultant's adaptation finding)). As the ALJ credited the consultant's finding that Plaintiff could adapt to routine changes, the ALJ included a

corresponding limitation to "routine changes" in the RFC (Tr. 38 (emphasis added)).

The Court will decline Plaintiff's request to interpret the phrase "work environments that undergo routine changes" (Tr. 38) to mean work environments where changes occur "frequently, regularly, or as a matter of course" (Docket Entry 9 at 10). The mere fact that the ALJ used slightly different language than the consultant to express the routine changes limitation, i.e., "work environments that undergo routine changes" (Tr. 38) versus "able to adapt to routine changes in the workplace" (Tr. 159), does not persuade the Court to interpret the ALJ's "routine changes" limitation in a manner that does not, given the ALJ's crediting of the consultant's routine changes limitation (see Tr. 45), comport with common sense, see Keyes-Zachary v. Astrue, 695 F.3d 1156, 1167 (10th Cir. 2012) ("In conducting [its] review, [the court] should, indeed must, exercise common sense. The more comprehensive the ALJ's explanation, the easier our task; but [the court] cannot insist on technical perfection.").

In sum, Plaintiff has not shown that the ALJ failed to account for Plaintiff's moderate limitation in adaptation and self-management by limiting her to "work environments that undergo routine changes" (Tr. 38), and, thus, Plaintiff's first issue on review falls short.

**2. Frequent Balancing with Standing and Walking**

Next, Plaintiff contends that "[t]he [RFC] assessment contains an internal contradiction regarding exertional capacity that renders it unsupported by substantial evidence." (Docket Entry 9 at 11 (bold font, all-caps font, and block formatting omitted).) More specifically, Plaintiff maintains as follows:

> According to [Social Security Ruling 83-10, Titles II and XVI: Determining Capability to Do Other Work – The Medical-Vocational Rules of Appendix 2, 1983 WL 31251 (1983) ("SSR 83-10")], the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. The RFC as written is inconsistent with this provision. On the one hand, the RFC states that Plaintiff can perform "**light work as defined in 20 CFR 404.1567(b)**" (Tr. 37). On the other hand, the RFC also states that Plaintiff "can **frequently balance with standing and walking on even terrain**" (Tr. 37). These two limitations are logically incompatible. How can some [sic] who can only frequently balance with standing and walking on even terrain perform work that requires standing and walking for 6 hours per work day? . . .
>
> The term "frequently" in Social Security regulations means from one-third to two-thirds of the workday. [Social Security Ruling 96-9p, Policy Interpretation Ruling Titles II and XVI: Determining Capability to Do Other Work – Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work, 1996 WL 374185 (July 2, 1996) ("SSR 96-9p")]. If Plaintiff can only frequently balance with standing and walking, she can only balance for approximately 2.5 to 5.5 hours out of an eight-hour workday. She cannot stand or walk for six hours because she lacks the balancing ability for the full 6-hour duration required by light work.
>
> Put simply, the RFC simultaneously says: (1) Plaintiff can stand and walk for six hours with constant balance on even terrain, and (2) Plaintiff can stand and walk for

approximately 2.5 to 5.5 hours with frequent balance on even terrain. Both cannot be true.

(Docket Entry 9 at 12-13 (stray parenthesis omitted) (emphasis supplied by Plaintiff).) According to Plaintiff, "[t]he error is not harmless because all three jobs identified at [s]tep 5 [of the SEP] are at a light exertional level" (id. at 13), and "because it creates uncertainty about Plaintiff's exertional capacity" (id. at 14). As the discussion below makes clear, Plaintiff's arguments miss the mark.

Plaintiff's argument proceeds from a faulty premise, i.e., that the ALJ found that Plaintiff could stand and walk for up to six hours in an eight-hour workday. (See Docket Entry 9 at 12-14.) In fact, the ALJ found that Plaintiff retained the ability "to perform light work as defined in 20 CFR 404.1567(b) with the following exceptions" (Tr. 37 (emphasis added)), and then proceeded to describe limitations that narrowed the full occupational base for unskilled light work, including the limitation that Plaintiff "c[ould] frequently balance with standing and walking on even terrain" (id.). At step five of the SEP, the ALJ fully recognized that "[Plaintiff]'s ability to perform all of substantially all of the requirements of [the light] level of work ha[d] been impeded by additional limitations" (Tr. 46 (emphasis added)), and, "to determine the extent to which th[o]se limitations erode[d] the unskilled light occupational base, the [ALJ] asked the [VE] whether

jobs exist[ed] in the national economy for an individual with [Plaintiff]'s age, education, work experience, and [RFC]" (id.). The VE responded to the dispositive hypothetical question with three jobs, marker, router, and photocopy machine operator, that an individual matching Plaintiff's age, education, work experience, and RFC could perform (see Tr. 129-30), and the ALJ then adopted those jobs to find Plaintiff not disabled at step five of the SEP (see Tr. 46-47). No contradiction thus arises between the ALJ's limitation to light work "with . . . exceptions" (Tr. 37) and his limitation to "frequent[] balanc[ing] with standing and walking on even terrain" (id.).

In sum, Plaintiff's second issue on review fails as a matter of law.

**3. Simple Instructions (Detailed but not Complex)**

Lastly, Plaintiff argues that "[t]he [RFC] assessment is not supported by substantial evidence where it contains contradictory mental limitations stating [Plaintiff] can follow 'simple instructions' that 'can be detailed but not complex.'" (Docket Entry 9 at 14 (bold font, all-caps font, and block formatting omitted).) In particular, Plaintiff asserts that the limitation in question "is internally contradictory[,]" because "'simple' and 'detailed' are distinct categories that describe different complexity levels, as set forth in the [Dictionary of Occupational Titles ('DOT')]" and that an "[i]nstruction cannot be both simple

and detailed simultaneously." (Id. at 15.) In Plaintiff's view, the ALJ's "error cannot be harmless" (id.) for the following reasons:

> First, it creates ambiguity about what instructions Plaintiff can follow. . . . Second, the [s]tep 5 jobs all require Reasoning [Development] Level 2 [('RDL 2')], which is defined as the ability to carry out 'detailed but uninvolved' instructions[, and i]f the RFC truly limits Plaintiff to 'simple' instructions, there is an apparent conflict with these jobs. . . . Third, the [VE]'s testimony is unreliable when based on contradictory limitations. . . . The [VE] must know whether [Plaintiff] is limited to simple instructions (suggesting Reasoning [Development] Level 1 [('RDL 1')]) or can handle detailed instructions (suggesting [RDL] 2). . . . Fourth, a court cannot determine whether the jobs cited are within the RFC[, w]hen the RFC itself is contradictory . . . . Fifth, the contradiction suggests the RFC was not carefully formulated to accurately reflect Plaintiff's mental limitations[, which] . . . raises serious questions about whether all of Plaintiff's limitations were properly considered.

(Id. at 15-16.)[7] As explained in more detail below, those assertions fail to carry the day.

Binding authority from the United States Court of Appeals for the Fourth Circuit defeats Plaintiff's argument. In Lawrence v. Saul, 941 F.3d 140 (4th Cir. 2019), the court noted that, in a

---

[7] A job's RDL reflects the degree of analytical ability required by the job, with the levels arranged in ascending order of complexity from level 1 to level 6. See generally DOT, App'x C ("Components of the Definition Trailer"), § III ("General Educational Development"), 1991 WL 688702. A job with RDL 1 entails the abilities to "[a]pply commonsense understanding to carry out simple one- or two-step instructions . . . [and d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." Id. (emphasis added). In contrast, a position rated at RDL 2 requires a worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions . . . [and d]eal with problems involving a few concrete variables in or from standardized situations." Id. (emphasis added).

prior decision, it had "found an apparent conflict between the claimant's [RFC], which limited her to jobs involving 'short, simple instructions,' and [RDL] 2's concept of 'detailed but uninvolved instructions.'" Lawrence, 941 F.3d at 143 (emphasis added) (citing Thomas v. Berryhill, 916 F.3d 307, 313-14 (4th Cir. 2019)). Critically, the court noted that "the key difference is that [the plaintiff in Thomas] was limited to 'short' instructions[,]" and that "'[s]hort' is inconsistent with 'detailed' because detail and length are highly correlated." Id. (emphasis added). The court further explained that, "[i]n contrast, the [ALJ] found that [the plaintiff] could perform jobs limited to 'simple, routine repetitive tasks of unskilled work[,]" and that "[t]here [wa]s no comparable inconsistency between [the plaintiff]'s [RFC] . . . and [RDL] 2's notions of 'detailed but uninvolved . . . instructions[,]'" because "detailed instructions are, in the main, less correlated with complexity than with length." Id. (emphasis added). Pursuant to this binding authority from the Fourth Circuit, no conflict existed between the RFC's limitation to "simple instructions" (Tr. 37) and its corresponding limitation to "detailed but not complex" instructions (Tr. 38).

In short, Plaintiff's third and final issue on review fails to demonstrate grounds for remand.

## III. CONCLUSION

Plaintiff has not established an error warranting remand.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **AFFIRMED**, and that this action is **DISMISSED** with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

September 14, 2026